UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINGER MATSUMOTO-HERRERA, Plaintiff, v. CONTINENTAL CASUALTY COMPANY, Defendant. | Case No. 14-cv-03626-VC **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** Re: Dkt. No. 38 |

Continental Casualty's motion for summary judgment is granted in part and denied in part. Mastumoto-Herrera's FEHA claims for age and disability discrimination based on Continental Casualty's decision to pass her over for the Operations Director position must go to trial. Her remaining claims may not.

<u>Age and Disability Discrimination Claims Concerning the Operations Director Position</u>

There is a genuine issue of fact on whether Continental Casualty's decision to pass over Matsumoto-Herrera for the Operations Director position was based partly on her age and disability, and whether the decisionmakers' subsequent explanation for passing her over was pretextual. The following evidence prevents the Court from concluding that no reasonable juror could find for Matsumoto-Herrera on this question:

- When Matsumoto-Herrera interviewed for the position, the decisionmakers were aware she was 53 years old and had just gone out on temporary medical leave.
- The candidate they hired, Olga Brody, was 38 years old.
- The job description for the Operations Director position stated that five years of managerial experience was "preferred." Brody had no experience directly managing employees, while Matsumoto-Herrera had more than five years.

- Matsumoto-Herrera's managerial experience was with underwriting technicians – the people the Operations Director would be called upon to manage.
- Although the decisionmakers said in deposition that they were not convinced Matsumoto-Herrera had the "strategic skills" needed for the position, her performance reviews (which were uniformly positive over the years) hinted that she had these skills.
- Although the decisionmakers touted Brody's "strategic skills" in their depositions, they spoke of this issue at a high level of generality, without providing clear examples or explaining with any specificity what they meant.
- Brody was fired a year later for inadequate performance.  *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) ("Facts tending to show that the chosen applicant may not have been the best person for the job are probative as they 'suggest that [the explanation] may not have been the real reason for choosing [the chosen applicant] over the [plaintiff].'") (quoting *Lindahl v. Air Franc*, 930 F.2d 1413, 1439 (9th Cir. 1991)); *cf. Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1487 (9th Cir. 1986).

To be sure, there is a good deal of evidence from which a jury could conclude that Continental Casualty's decision to pass over Matsumoto-Herrera for the Operations Director position was not discriminatory, and that the decision to hire Brody was merely a mistake.  But the above-cited evidence constitutes "specific and substantial facts" to create a triable issue on pretext. *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011).

Remaining FEHA Discrimination Claims

Continental Casualty provides legitimate non-discriminatory reasons for eliminating Matsumoto-Herrera's Support Services Manager position and for not interviewing her for the administrative assistant position.  The Support Services Manager position was eliminated as part of a restructuring of Continental Casualty's field operations by Andrew Cohen, who did not know that Matsumoto-Herrera held the position when it was eliminated.  Matsumoto-Herrera was not interviewed for the administrative assistant position because, unlike those who were, she had not recently served as an administrative assistant, and because her prior salary was approximately

2

1  $50,000 higher than the offered salary for that position, which caused concern that Matsumoto-
2  Herrera would leave promptly upon finding a higher paying position.  Matsumoto-Herrera points
3  to no evidence suggesting that these reasons for eliminating her position or for not interviewing
4  her for the administrative assistant position were a "mask for prohibited [] bias." *Guz v. Bechtel*
5  *Nat'l, Inc.*, 24 Cal. 4th 317, 353 (2000).

6  Matsumoto-Herrera also provides no evidence to create a triable dispute on her gender
7  discrimination claims.  Women were hired for both the Operations Director and administrative
8  assistant positions.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

Claim for Failure to Prevent Discrimination

10  There is no genuine issue of fact on whether Continental Casualty failed to prevent
11  discrimination.  Matsumoto-Herrera has provided no evidence suggesting that Continental
12  Casualty "failed to take all reasonable steps to prevent discrimination" and that "this failure caused
13  [her] to suffer injury." *Lelaind v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1103
14  (N.D. Cal. 2008) (citing Cal. Civil Jury Instructions (BAJI) 12.11).  She notes that two Continental
15  Casualty employees did not receive disability discrimination training, but there is no evidence
16  either employee was involved in the decision to hire Brody, rather than Matsumoto-Herrera, for
17  the Operations Director position.

Claim for Wrongful Termination

19  As discussed above, Matsumoto-Herrera fails to raise a triable dispute on her claim that her
20  position was eliminated in violation of FEHA.  Therefore, her claim for wrongful termination also
21  fails.  *See Haney v. Aramark Uniform Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004) (for
22  wrongful termination claim, plaintiff must show that "the alleged violation of public policy was a
23  motivating reason for the discharge").[1]

Claims Relating to Interactive Process and Reasonable Accommodation

25  To survive summary judgment on her claim for failure to engage in the interactive process,
26  Matsumoto-Herrera must establish a triable dispute on whether she initiated the process, identified

---

[1] Matusmoto-Herrera does not argue that her wrongful termination claim can somehow be linked to Continental's decision to pass her over for the Operations Director position.

1  the disability and resulting limitation, and suggested some reasonable accommodation. *See Scotch*
2  *v. Art Inst. of Cal.-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1013 (2009). But Matsumoto-
3  Herrera never informed anyone at Continental Casualty of any limitation she had as a result of a
4  disability beyond the need for time off, which Continental Casualty gave her.

5  Nor does Matsumoto-Herrera provide any evidence that Continental Casualty failed to
6  offer a reasonable accommodation. *See id.* at 1009-12. She did not propose any accommodation
7  to Continental Casualty beyond her requests for time off.

   <u>Claim for Violation of FMLA/CFRA</u>

9  Matsumoto-Herrera provides no evidence of a connection between the decision to
10 eliminate her Support Services Manager position and her request for medical leave. *See*
11 *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) (for FMLA claim,
12 plaintiff must "prove by a preponderance of the evidence that her taking of FMLA-protected leave
13 constituted a negative factor in the decision to terminate her"); *Faust v. Cal. Portland Cement Co.*,
14 150 Cal. App. 4th 864, 885 (2007) (for CFRA claim, plaintiff must show that she "suffered an
15 adverse employment action, such as termination, fine, or suspension, because of her exercise of
16 her right to CFRA leave"). She points out that she originally requested medical leave beginning
17 February 1, 2013, months before Continental Casualty decided to eliminate her position. But as
18 noted above, Cohen, who drove the restructuring process that resulted in Matsumoto-Herrera's
19 position being eliminated, did not know who held the Support Services Manager position. There
20 is no evidence suggesting that anyone involved in the decision to eliminate the Support Services
21 Manager position was aware of Matsumoto-Herrera's February 1 request for medical leave.

   <u>Claim for Intentional Infliction of Emotional Distress</u>

23 Matsumoto-Herrera points to no conduct by Continental Casualty or any of its employees
24 that "is so extreme as to exceed all bounds of that usually tolerated in a civilized community."
25 *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215 (2011) (citation and internal quotation marks
26 omitted); *see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple
27 pleading of personnel management activity is insufficient to support a claim of intentional
28 infliction of emotional distress, even if improper motivation is alleged. . . . [T]he remedy is a suit

4

1 against the employer for discrimination.").

### Claim for Negligent Infliction of Emotional Distress

Nor does Matsumoto-Herrera point to evidence showing that she suffered "serious emotional distress," which would be necessary to support a claim for negligent infliction of emotional distress. *See Wong v. Jing*, 189 Cal. App. 4th 1354, 1377-78 (2010). Contrary to Continental Casualty's argument, Matsumoto-Herrera is not required to have seen a therapist or to have been treated with medication prior to her deposition to create a fact issue with respect to emotional distress. But she must provide more than a conclusory declaration stating that her self-esteem has been "shattered" and that she continues "to feel a lack of self-worth and despair." *See id*. (tort requires "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it" (citations and internal quotation marks omitted)).

**IT IS SO ORDERED.**

Dated: August 27, 2015

_____
VINCE CHHABRIA
United States District Judge